# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

April 29, 2010

To:
Laura A. Briggs
UNITED STATES DISTRICT COURT
Southern District of Indiana
101 Northwest MLK Boulevard
Evansville , IN 47708-0000

| | |
|---|---|
| No.: 09-1740 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>BRIAN JONES,<br>Defendant - Appellant |
| No.: 09-1823 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>LEONARD HOSKINS, also known as POOH,<br>Defendant - Appellant |
| No.: 09-1824 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee |

| | v.<br><br>JEREMY SIMMONS,<br>Defendant - Appellant |
|---|---|
| No.: 09-1822 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>MITCHELL MCGHEE,<br>Defendant - Appellant |
| No.: 09-1970 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>DAMAND MATTHEWS, also known as MUNCHIE,<br>Defendant - Appellant |

**Originating Case Information:**

District Court No: 3:07-cr-00024-RLY-WGH-3
Southern District of Indiana, Evansville Division
District Judge Richard L. Young

**Originating Case Information:**

District Court No: 3:07-cr-00024-RLY-WGH-4
Southern District of Indiana, Evansville Division

**Originating Case Information:**

District Court No: 3:07-cr-00024-RLY-WGH-1
Southern District of Indiana, Evansville Division

**Originating Case Information:**

District Court No: 3:07-cr-00024-RLY-WGH-7
Southern District of Indiana, Evansville Division

**Originating Case Information:**

District Court No: 3:07-cr-00024-RLY-WGH-9
Southern District of Indiana, Evansville Division

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:     Record retained for use in case no.

RECORD is being RETAINED for use in case number:     09-1825

This notice sent to:

[X]     United States Marshal          [X]     United States Probation Officer

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                              **Received by:**

_____4/29/10_____          _____

form name: **c7_Mandate** (form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov



CERTIFIED COPY
A True Copy
Teste:

*John Doe*

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

## FINAL JUDGMENT

April 7, 2010

BEFORE:    KENNETH F. RIPPLE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| Nos. 09-1740, 09-1822, 09-1823, 09-1824, 09-1825, 09-1970 | UNITED STATES OF AMERICA, Plaintiff - Appellee<br><br>v.<br><br>BRIAN JONES, et al., Defendants - Appellants |

**Originating Case Information:**

District Court No: 3:07-cr-00024
Southern District of Indiana, Evansville Division
District Judge Richard L. Young

Defendant-Appellant Cook's conviction is **VACATED** and his case is **REMANDED** to the district court for proceedings consistent with this court's opinion. The convictions and sentences of all other defendants are **AFFIRMED**. This is in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment** (form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:



Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 09-1740, 09-1822, 09-1823, 09-1824, 09-1825, 09-1970

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN JONES, et al.,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 3:07-CR-24—**Richard L. Young**, *Chief Judge.*

ARGUED OCTOBER 28, 2009—DECIDED APRIL 7, 2010

Before RIPPLE, WILLIAMS and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Brian Jones, Mitchell McGhee, Leonard Hoskins, Jeremy Simmons, Sam Cook, Damand Matthews and several other defendants were charged with conspiring to distribute large quantities of narcotics in Evansville, Indiana. Some of the defendants pled guilty, but the named defendants exercised their right to a jury trial, during which they were faced with evidence that included the description of a controlled buy, the

testimony of some alleged members of the conspiracy, and voice identifications from incriminating wiretapped conversations between the defendants. The jury convicted the defendants, and all were sentenced to life except Cook, who received over 20 years' imprisonment. The defendants raise a host of legal challenges on appeal, which we summarize here and analyze in further detail below.

The majority of the defendants' arguments lack merit, having clearly been foreclosed by our precedent. First, it was not error for the district court to utilize a jury form asking the jury to find that each defendant was responsible for more than a specific amount of drugs. Second, life sentences for participation in a drug conspiracy do not violate the Eighth Amendment under current precedent. Third, the clerical error in the warrant affidavit for the wiretaps that formed the basis of this prosecution did not prejudice the defendants, and we see no reason to exclude evidence supported by a valid warrant and ample probable cause. Fourth, defendant McGhee's confession, which he gave after asking to speak to a detective and without being subjected to an interrogation, was voluntary and admissible. Fifth, the district court was within its discretion to exclude the testimony of Agent Douglas Freyberger, whom defendants Hoskins and McGhee wanted to question regarding statements that co-defendant Lamont Robinson made during his guilty plea colloquy, because it was hearsay. Sixth, the district court correctly refused to grant defendant Matthews's request for a jury instruction on a lesser included charge because the proposed lesser

charge contained elements distinct from the drug conspiracy charge, and so it did not meet the legal definition for "lesser included charge." And finally the government's comment, made during closing arguments, on the defendants' failure to offer testimony to contradict the government's evidence did not violate their Fifth Amendment rights because it was not a direct comment on their failure to testify and many non-defendants existed that could have been called to counter the government's position.

Defendant Cook's case is more troubling. After initially identifying Cook's voice on wiretaps based on approximately sixty words he spoke during two pretrial appearances, Detective Cliff Simpson gave additional testimony on rebuttal that he also listened to Cook speak with his counsel for ten to fifteen minutes before a court proceeding. He testified that, based on hearing that conversation, he was confident that it was Cook's voice on the wiretaps. In addition to the obvious concerns raised by the idea of a detective listening to a conversation between a defendant and counsel, Detective Simpson's testimony presents serious evidentiary issues. By allowing this testimony, the court created a conflict of interest—only Cook and his attorney were in the position to refute the detective's claim by testifying that this conversation never took place. This conflict of interest went unresolved, and Detective Simpson's testimony was admitted without Cook having the opportunity to contradict it. Because the testimony was admitted, we cannot be sure how much weight the jury gave to his initial identification versus how much weight it gave

to his later testimony that he recognized the voice based on hearing Cook speak with his lawyer for ten to fifteen minutes. So, given the scant evidence to implicate Cook in this conspiracy aside from the flawed voice identification, we must vacate his conviction and remand for a new trial.

## I. BACKGROUND

Brian Jones, Mitchell McGhee, Leonard Hoskins, Jeremy Simmons, Sam Cook, and Damand Matthews were part of a conspiracy to distribute large quantities of cocaine and cocaine base in the greater Evansville, Indiana area. Simmons, McGhee, and later Matthews's girlfriend Sherita Nesbit would drive from Evansville to Chicago in order to get cocaine from Simmons's supplier. When they returned, they converted the cocaine to crack and distributed it to the other defendants to sell on the streets. The government charged all the defendants with conspiracy, along with Nesbit and Lamont Robinson. At trial, the government presented substantial evidence, including audiotapes from a three-month long wiretap on several of the defendants' phones, Nesbit's testimony, the testimony of Stanley Pike (an original member of the conspiracy), evidence relating to several controlled buys, and evidence of police surveillance of the defendants. A jury found all of the defendants guilty, and the district court sentenced all the defendants to life imprisonment, except for Cook, who received 257 months' imprisonment. On appeal, the defendants do not challenge the sufficiency of the evidence against them. Instead, they present several legal arguments. Because all

the relevant disputes are legal in nature, we will detail any additional facts necessary in the context of our analysis below.

## II. ANALYSIS

### A. Defendants' Jury Form and Eighth Amendment Arguments

The defendants' first two legal challenges do not warrant much discussion. First, they argue that the district court erred by failing to provide separate jury forms for each defendant because the jury could have found that different defendants were responsible for different drug quantities. Instead, the verdict form only asked the jury to find that each defendant was responsible for more than 50 grams of cocaine. We have already foreclosed this argument. *See United States v. Seymour*, 519 F.3d 700, 710 (7th Cir. 2008) (holding that jury was not required to make a defendant-specific drug quantity determination in prosecution for conspiracy); *see also United States v. Tolliver*, 454 F.3d 660, 669 (7th Cir. 2006). Second, the defendants argue that a life sentence for participation in a drug conspiracy is disproportionate to the crime committed, amounting to a cruel and unusual punishment that violates the Eighth Amendment. However, as the defendants conceded at oral argument, we have rejected this argument before, and while the contention is by no means meritless, there is existing Supreme Court precedent on this issue. *See, e.g., Lockyer v. Andrade*, 538 U.S. 63 (2003); *Ewing v. California*, 538 U.S. 11 (2003); *see also United States v. Strahan*, 565

F.3d 1047, 1052-53 (7th Cir. 2009) (citing *Lockyer* and *Ewing*).

**B. The Wiretap Warrant**

The Drug Enforcement Agency ("DEA") asked a confidential informant ("CI") to conduct four controlled buys with Defendant Simmons. Each time, the CI called one of Simmons's cell phones to set up the drug purchase. The DEA used the CI's statements and agents' surveillance of the controlled buys as the primary basis to establish probable cause in the warrant affidavit seeking a wiretap on Simmons's cell phones. In the warrant affidavit, as required by 18 U.S.C. § 2516(1), the Deputy Attorney General, relying on and citing Attorney General Order No. 2887-2005 ("Order 2005"), stated that he authorized the DEA to request these wiretaps. However, at the time the affidavit was filed, Order 2005 had been rescinded and replaced by Attorney General Order No. 2887-2007 ("Order 2007"). Order 2007 is materially the same as Order 2005, and also gives the Deputy Attorney General the authority to approve a request for a wiretap. A federal magistrate judge found that probable cause existed and approved the warrant for the wiretaps.

On appeal, the defendants contend that the wiretap evidence should be suppressed because it relied on an invalid executive order. In doing so, they rely on 18 U.S.C. § 2518(10)(a), which allows an aggrieved defendant to move to suppress wiretap evidence if: "(i) the communication was unlawfully intercepted; (ii) the order

of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." None of these applies here. Given that Order 2007 authorizes the same official to approve the wiretap request as Order 2005 previously did before its repeal, the defendants cannot show that they were in any way prejudiced by what in effect amounted to replacing a "7" with a "5" in the warrant affidavit. Even if citing to the incorrect order was an egregious violation, the defendants do not argue why suppression is the appropriate remedy given that the DEA acted in good faith. *See United States v. Chavez*, 416 U.S. 562, 575 (1974) (holding that misidentification of the officer authorizing the wiretap does not require suppression because it did not "affect the fulfillment of any of the reviewing or approval functions required by Congress"); *United States v. Fudge,* 325 F.3d 910, 918 (7th Cir. 2003) (same). As in *Chavez*, none of the reviewing functions required by Congress has been subverted—a clerical error such as this is not a reason to invalidate an otherwise proper warrant which is supported by ample probable cause. So, we decline the defendants' request to suppress the wiretap evidence against them.

The defendants also claim that statements in the warrant affidavit about unindicted suspects somehow caused them harm. However, the warrant contained specific evidence relating to the specific cell phones of Simmons, and as the magistrate found, this evidence formed the basis of probable cause to tap those phones in particular. So this argument fails too.

## C. Lamont Robinson's Out-of-Court Statements

Lamont Robinson was originally indicted and tried along with the other defendants. The government presented testimony regarding his involvement in the conspiracy and his role as an enforcer and drug mule during its case-in-chief. In the middle of the trial, however, he entered into a Rule 11(c) plea agreement, in which he agreed to plead guilty in exchange for a specified term of 12 years' imprisonment. At his change of plea hearing, in response to the government's questions, he stated that he never delivered cocaine to defendants Hoskins or McGhee. During the defendants' case-in-chief, Robinson asserted his Fifth Amendment rights, and Hoskins and McGhee sought to introduce Robinson's statements through Agent Douglas Freyberger, who was present at the change of plea hearing. The government and counsel for defendant Jones objected, and the district court excluded the testimony.

We review a district court's decision regarding the admission of evidence for an abuse of discretion. *United States v. Jackson*, 540 F.3d 578, 587 (7th Cir. 2008). The district court's determination as to the trustworthiness of out-of-court statements is "entitled to considerable deference" and will be upheld unless "clearly erroneous." *Id.* at 588. Additionally, we will only reverse a conviction on these grounds when the erroneous ruling had a "substantial influence over the jury." *United States v. Harrison*, 431 F.3d 1007, 1011 (7th Cir. 2005). Here, the district court did not err in excluding Agent Freyberger's testimony because it was hearsay. The defendants sought to

introduce it for the truth of the matter asserted (that Robinson never gave cocaine to Hoskins or McGhee), and they did not point to an exception to the hearsay bar that would permit Agent Freyberger's testimony to be introduced. They cite Federal Rule of Evidence 804, which permits hearsay testimony in certain circumstances if the declarant is unavailable to testify because of a legal privilege, such as here. However, of the four circumstances in which Rule 804 allows hearsay testimony, the only one that could plausibly apply is Rule 804(b)(3)'s "[s]tatement against interest." We do not see how this statement was against Robinson's interest, especially since he was already pleading guilty. Additionally, Hoskins and McGhee fail to make any argument beyond a mere recitation of Rule 804 as to why this exception should apply in this case.

Moreover, as Jones's counsel pointed out, if this testimony was admitted, the government would have a right to inquire about the circumstances in which the statements were made—a guilty plea hearing—which would severely prejudice the defendants. The government would also be allowed to inquire about Robinson's motive in making these statements. Given that his sentence was already set, Robinson had nothing to gain and something to lose from inculpating his codefendants. These two facts make it unlikely that this testimony would have had a "substantial impact" on the jury in favor of Hoskins and McGhee. In summary, given that Hoskins and McGhee have failed to cite a single relevant case that supports the proposition that Agent Freyberger's testimony should have been admitted, we

cannot say that the district court abused its discretion
in excluding it.

### D. Defendant McGhee's Statements

Officer Jacob Taylor arrested defendant McGhee. While
he was being processed, McGhee spit out ten bags of
cocaine, and the intake officers inquired about how
many bags he had initially swallowed. He answered that
he had swallowed twelve bags. So the officers assumed
that two bags might still be in his system, which could
possibly lead to imminent physical injury, and Officer
Taylor transported him to the hospital. According to
Officer Taylor, without prior questioning, McGhee re-
peatedly asked to speak to a narcotics detective and
told Officer Taylor that he obtained the bags of cocaine
to deliver to a female.

The next morning, in response to McGhee's requests to
speak to a detective, Detective Mike Gray went to the
hospital. There, McGhee made several incriminating
statements to Detective Gray. He later moved to sup-
press the statements, claiming that his confession was
taken in violation of his *Miranda* rights and was not
voluntary because it was made while he was under the
influence of cocaine. It is undisputed that neither Officer
Taylor nor Detective Gray gave McGhee his *Miranda*
warnings. At the suppression hearing Detective Gray
testified that while at the hospital, he asked McGhee
why he wanted to see him, but asked no leading ques-
tions of any sort. Detective Gray claimed that in response,
McGhee made the incriminating statements. Both officers

testified that McGhee did not appear to be under the influence of any drugs. The district court denied McGhee's motion, finding that the evidence indicated that Detective Gray did not interrogate McGhee and that McGhee was not under the influence of cocaine when he made these incriminating statements.

There is no dispute that McGhee was in custody when he spoke with Detective Gray at the hospital. However, a defendant must both be in custody and subject to "interrogation" to trigger the *Miranda* requirement. *United States v. Burns*, 37 F.3d 276, 280 (7th Cir. 1994). "Interrogation" is defined as "express questioning" or "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). If a defendant makes a statement in response to words or actions by the police that do not constitute interrogation or if the defendant himself initiates further communications, the police are not prohibited from "merely listening" to his voluntary statement. *Edwards v. Arizona*, 451 U.S. 477, 494 (1981); *United States v. Briggs*, 273 F.3d 737, 740 (7th Cir. 2001). Here, Officer Taylor's testimony showed that McGhee asked to speak to a detective, and Detective Gray's testimony indicated that McGhee was not subject to direct questioning or any other form of coercion before he confessed. The facts before us demonstrate that McGhee was not subject to interrogation.

Also, there is no evidence that almost twenty-four hours after possibly ingesting cocaine, McGhee was under the influence, especially given the fact that he told the officers he was not. Even if he was, he presents no argument linking the level of his intoxication with the lack of voluntariness of his statements. *See United States v. Montgomery*, 14 F.3d 1189, 1195 (7th Cir. 1994) ("Even if we were to assume that [Defendant] was a cocaine addict who may have been incapacitated, we would not necessarily conclude that the statement was involuntary because there still must be some showing of official coercion."). In sum, there is no evidence that this confession was anything other than voluntary and the district court did not err by admitting it.

### E.  Defendant Matthews's Request For Lesser Included Offense Instruction

At the conclusion of the trial, Defendant Matthews asked the court to instruct the jury that it could convict him of the lesser offense of using a communication facility to aid a narcotics offense, 21 U.S.C. § 843(b), instead of the offense he was charged with, conspiracy to distribute controlled substances, 21 U.S.C. § 846. The court invited argument from defense counsel on why it should do this, which counsel declined to make, and the court ruled that use of a communication facility was not a lesser included offense of conspiracy and declined to give the instruction to the jury.

To constitute a lesser included offense, the lesser offense must be: (1) "included" in the greater offense; and (2) a

rational jury must be able to acquit on the greater offense but still convict on the lesser offense. *United States v. McCullough*, 348 F.3d 620, 624 (7th Cir. 2003). We review a district court's decision on the first prong de novo and the second prong for abuse of discretion. *Id.* We employ the familiar *Blockburger* test for the first prong of this analysis: to be legally "included" in the greater offense, all of the elements of the lesser offense must be included in the greater offense—in other words, the elements of the lesser offense must be a subset of those of the greater offense. *United States v. Blockburger*, 284 U.S. 299, 304 (1932). If the lesser offense contains an element that the greater offense does not, it does not constitute a "lesser included offense." Here, the elements of the greater offense, conspiracy, include: (1) conspiring to distribute drugs; and (2) knowingly joining the conspiracy with the intent to further it. *See* 21 U.S.C. § 846. To be guilty of the proposed lesser offense, Matthews would have had to: (1) intentionally; (2) use a communication facility; (3) to commit a felony. *See* 21 U.S.C. § 843(b). 21 U.S.C. § 843(b) contains an element that 21 U.S.C. § 846 does not—use of a communication facility. Therefore, "use of a communication facility to aid a narcotics offense" is not a lesser included offense of conspiring to distribute drugs. It is possible to participate in a drug conspiracy without ever touching a communication facility. Matthews argues that all of the evidence at trial suggested he used a phone, a "communication facility," as part of the conspiracy, and therefore use of a "communication facility" is a necessary element of the conspiracy charge in this case. This argument is unpersuasive. It

was legally possible for the government to prove the conspiracy charge without proving that Matthews used a phone; the law dictates a simple comparison of the elements on paper and not a fact inquiry into a defendant's actual behavior. *See McCullough*, 348 F.3d at 624. So, given that Matthews has failed to satisfy the first prong of the *McCullough* standard, the district court correctly refused to give the lesser included offense instruction to the jury.

### F.  The Government's Closing Argument

During closing argument, the government utilized a visual aid with a zero on it, and stated that the "[m]ost important thing, though, to think about with the voice identification is the number zero, and the thing that's important about the number zero is that there has been zero testimony to contradict" the police officers' voice identifications of the defendants on the wiretapped conversations. The government also stated that the evidence regarding voice identifications in the case was "uncontroverted." Reiterating the same theme later in the closing, the government argued that Detective Simpson had accurately identified the speakers on the wiretaps, and again commented that there was "zero evidence" to challenge the identification. The defendants contend that these statements and the visual aid violated their Fifth Amendment rights against self-incrimination because they constituted commentary on the defendants' failure to testify, and that a new trial is warranted as a result. The defendants did not object to these com-

ments at trial, and thus we review for plain error. *United States v. Harris*, 271 F.3d 690, 700 (7th Cir. 2001). We find none here, nor do we find that the defendants have shown the government's comments were obviously or clearly improper. *Id*. (in context of claim of prosecutorial misconduct, plain error review includes additional burden for defendants to demonstrate that comments were "obviously" or "clearly" improper) (citing *United States v. Renteria*, 106 F.3d 765, 766-67 (7th Cir. 1997)).

Direct comment on a defendant's failure to testify is a *per se* Fifth Amendment violation. *United States v. Butler*, 71 F.3d 243, 254 (7th Cir. 1995). An indirect comment on a defendant's failure to testify also violates the Fifth Amendment if it was "manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Id*. The government's statements here were not direct commentary on the defendants' failure to testify; instead they were more general references to the overall lack of testimony or other evidence challenging the government's case. Our job is to examine whether the statements were inappropriate indirect comments, and we conclude they were not. The challenged statements do not appear to have been "manifestly intended" as a comment on the defendants' failure to testify, nor is it clear that a jury would "naturally and necessarily" take them as such. *Butler*, 71 F.3d at 254; *Harris*, 271 F.3d at 700-01. The government's reference to "zero evidence" was a reference to the defendants' failure to offer competing evidence of *any* kind, including testimony from others or documentary evidence.

In *Yancey v. Gilmore*, 113 F.3d 104, 106 (7th Cir. 1997), the government made statements similar to those above, commenting on the ability of the defendants to offer testimony contradicting the government's evidence. We held that such statements violate the Fifth Amendment only if a defendant is the "only person capable of contradicting, denying, rebutting, disputing, challenging, or controverting the evidence at issue." *Id.*; *see also United States v. Alanis*, 265 F.3d 576, 586-87 (7th Cir. 2001). Here, as in *Yancey*, the defendants were not the only people capable of disputing or challenging the government's evidence; testimony of non-defendants could theoretically have been offered to contradict the voice identifications. *See Harris*, 271 F.3d at 701 ("[W]here a witness other than the defendant could have, but does not, contradict the government's proof, references to 'uncontested' evidence are not improper."). The defendants have not shown that permitting the jury to hear the government's comments was plainly erroneous.

That said, we reiterate the concern expressed in *Butler* that prosecutors be "cautious in making this type of statement" given the Fifth Amendment concerns that can potentially be implicated. 71 F.3d at 255. A comment like "zero testimony" could be better articulated to make clearer that it refers to the balance or lack of evidence in the case overall, and not specifically to the decision of a defendant not to testify.[1]

---

[1] The government also stated that the defendants had access to 4,500 wiretap recordings, and that if the defendants had wanted

(continued...)

## G. Defendant Cook's Voice Identification

The voice identification of defendant Cook is more problematic. The government's primary evidence that Cook participated in the conspiracy consists of incriminating statements he allegedly made on a number of the wiretapped phone conversations.[2] In order to identify the voice on the wiretaps as being Cook's, the government called Detective Simpson, who testified regarding Cook's voice on two occasions—first as the government put forth its case-in-chief, and then again at the close of the trial as a rebuttal witness in an effort to strengthen the identification.

---------------

(...continued)

to do so, they could have played any of them for the jury to contradict the calls that the government had selected to play. The defendants timely objected to this comment as improperly shifting the burden of proof, and they raise the same argument on appeal. This argument fails. A prosecutor may argue inferences based on the balance or lack of evidence, so long as the jury has been properly instructed as to the burdens of proof in the case, and so long as the remarks are not improper commentary on a failure to testify. *Butler*, 71 F.3d at 255 n.8. Here, the jury was properly instructed as to the burdens of proof in the case, and as we have already concluded, there was not improper commentary regarding testimony violative of the defendants' Fifth Amendment rights.

[2] The only other evidence against Cook appears to be the testimony of a co-conspirator referring to him as a customer of defendant Simmons. The government concedes that without the wiretap recordings, there would not have been sufficient evidence to convict Cook of conspiracy.

In laying the foundation for his identification of Cook on the wiretaps in the case-in-chief, Detective Simpson testified that he recognized Cook's voice from having attended some pretrial proceedings and hearing him speak in open court. Detective Simpson testified he compared the voice he heard in the proceedings to that on the wiretapped phone conversations, and that in his opinion Cook was one of the speakers. On cross-examination, Detective Simpson stated that he had heard Cook speak in court on "four or five" occasions, and acknowledged that on these occasions Cook may have only spoken as little as "two or three" sentences. He also admitted on cross that he had never personally interviewed Cook, making Cook the only defendant at trial whose voice identification was not supported by an in-person interview with the identifying agent. Cook objected to Detective Simpson's identification on the basis that it lacked sufficient foundation, and the district court overruled the objection, finding that Detective Simpson had a sufficient level of familiarity to render his opinion. Cook argues on appeal that the few words he spoke in open court could not have provided a sufficient basis for a voice identification.

While the basis for Detective Simpson's identification of Cook's voice was relatively weak, it meets the "low bar of minimal familiarity" required in our case law, if not by much. *See United States v. Neighbors*, 590 F.3d 485, 493 (7th Cir. 2009). Federal Rule of Evidence 901(b)(5) allows voice identification of a voice on an audiotape "by opinion based upon hearing the voice *at any time* under circumstances connecting it with the alleged speaker."

(emphasis added). We have consistently held that minimal familiarity is sufficient for admissibility purposes under Rule 901(b)(5). *See Neighbors*, 590 F.3d at 493; *see also United States v. Recendiz*, 557 F.3d 511, 527 (7th Cir. 2009). Challenges to the accuracy of a voice identification "go to the weight of the evidence, and the issue is for the jury to decide." *United States v. Alvarez*, 860 F.2d 801, 809 (7th Cir. 1988). While Cook spoke relatively little during his pretrial appearances, we cannot say that the identification was insufficient as a matter of law. *See, e.g., United States v. Mansoori*, 304 F.3d 635, 665 (7th Cir. 2002) (while voice identification based on hearing defendants speak only once in open court was "relatively weak," admission was proper because "we cannot say as a matter of law that the brief opportunity [the identifying agent] had to hear the defendants in court was insufficient to permit his voice identification."). Detective Simpson's testimony provided a sufficient foundation for his identification of Cook's voice so as to be admissible; its accuracy was a question for the jury to weigh.[3] *See id.; see also Neighbors*, 590 F.3d at 493-94.

That said, a witness's claim to have heard a defendant in open court should not be accepted as *per se* sufficient to

---

[3] With regard to accuracy, we note that Detective Simpson misidentified two of Cook's codefendants in specific parts of the wiretap transcripts. On the second day of trial, Detective Simpson testified that he had on the previous day incorrectly identified Defendants Jones and Robinson as speakers on five of the transcribed wiretapped calls that had been introduced into evidence.

show minimal familiarity for Rule 901(b)(5) purposes. Courts should examine what actually transpired at the court proceeding in question to ensure that the defendant actually spoke enough to give a listener minimal familiarity with his or her voice. There may well be situations in which a defendant said so little that a listener could not claim the minimal familiarity our case law requires; and in such a situation, a court would be justified in finding that the voice identification was not admissible. Here, while Cook spoke relatively little at his pretrial appearance (by his count, 62 words in total) he did go beyond simply responding "yes" or "no" to inquiries by the court and spoke a number of sentences.

While we are comfortable—if barely—that Cook's in-court statements provided an adequate foundation upon which to admit Detective Simpson's voice identification, our inquiry does not end here, because Detective Simpson gave additional testimony that gives rise to serious questions. Near the end of trial, Cook introduced rebuttal evidence in the form of court transcripts showing he had only spoken in open court twice, not the "four or five" times Detective Simpson had initially claimed. In response, the government recalled Detective Simpson in an effort to strengthen the voice identification. Detective Simpson then testified, for the first time, that in addition to having heard Cook speak in open court, he had also on one occasion overheard Cook speaking privately with his attorney for ten to fifteen minutes *before* the judge began the proceedings. Detective Simpson testified that this conversation constituted part of his voice identification:

GOVERNMENT COUNSEL: All right. Before the judge came out on the bench, did you have the opportunity to hear Sam Cook speak?

DETECTIVE SIMPSON: Yes.

GOVERNMENT COUNSEL: For how long?

DETECTIVE SIMPSON: Approximately ten to 15 minutes.

GOVERNMENT COUNSEL: Who was he talking to?

DETECTIVE SIMPSON: His attorney.

[. . .]

GOVERNMENT COUNSEL: Okay. And without getting into the subject matter of the conversation, from where you were seated, could you hear Mr. Cook speak with his lawyer?

DETECTIVE SIMPSON: Yes.

GOVERNMENT COUNSEL: Okay. And did they appear to be speaking in kind of a normal tone of voice, or were they whispering?

DETECTIVE SIMPSON: They were speaking in a normal tone of voice.

| GOVERNMENT COUNSEL: | And is the ten to 15 minutes that you heard Mr. Cook speak part of your voice identification of Mr. Cook? |
|---|---|
| DETECTIVE SIMPSON: | Yes. |

We find it troubling that Detective Simpson may have eavesdropped, however inadvertently, on a defendant's private communications with his attorney (and continued to do so for ten to fifteen minutes), and equally troubling that the government saw fit to have Detective Simpson testify about the conversation. We also find it strange that Detective Simpson made no mention of this alleged conversation when he initially testified at the beginning of trial. During his initial testimony, Detective Simpson said only that he heard Cook speak "in open court," and he made no reference whatsoever to having heard a private ten-to-fifteen minute conversation. This, despite the fact that the number of words spoken in such a conversation would involve far more of Cook's voice than any limited open-court statements did, and thus would likely have been the primary foundation upon which Detective Simpson based his identification.[4]

---

[4] We are also concerned that if Detective Simpson did indeed overhear privileged conversations prior to trial, he could potentially have shared any information gleaned from such conversations with Agent Freyberger, his co-case agent who participated in trial with government counsel. Government

(continued...)

Cook first objected to Detective Simpson's testimony regarding the conversation on attorney-client privilege grounds, an argument he reiterates on appeal. Troubling as Detective Simpson's testimony may be, however, we do not set aside the district court's ruling because the contents or subject matter of the alleged conversation were not revealed. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). Detective Simpson testified only that he listened to Cook's voice such that he was confident that it was the same voice that he had heard on the audiotapes. The district court did not err in overruling Cook's objection to the testimony on the basis that it violated his attorney-client privilege, nor did it err in denying Cook's request for a mistrial on the same grounds.

More fundamentally, Cook challenges whether a conversation between him and his attorney even occurred, and maintains he should receive a new trial because he was unable to test Detective Simpson's claim or impeach his testimony. This is because the only people in a position to rebut Detective Simpson's testimony were Cook or his lawyer, giving rise to a conflict of interest for counsel. On cross-examination of Detective Simpson, defense counsel challenged the idea that there had been any

---

(...continued)

counsel stated at oral argument that he did not discuss the contents of the alleged conversation with Detective Simpson, but was not aware of whether any discussions had occurred between Detective Simpson and Agent Freyberger.

audible conversation between him and Cook and claimed
that Detective Simpson was not telling the truth. At oral
argument before this court, counsel reiterated that no
such conversation occurred, and stated that as a matter
of longstanding practice, he never has conversations
with clients in open court where they could be over-
heard. He also told the district court that the detective's
testimony "made me a witness in the trial." Cook's attor-
ney moved for a mistrial on the same basis minutes
later, as well as on attorney-client privilege grounds,
arguing that "it would be difficult for me to represent
my client and testify at the same time regarding what
was said at counsel table and how it was said and
who could have heard it." The district court ruled that
there was no attorney-client privilege problem war-
ranting a mistrial. It did not address the conflict of
interest issue.

We review the district court's evidentiary decisions and
denial of a motion for mistrial for abuse of discretion.
*United States v. Lauderdale*, 571 F.3d 657, 660 (7th Cir. 2009);
*United States v. McCulley*, 178 F.3d 872, 875 (7th Cir. 1999).
While the government argues that our review should be
for plain error because Cook did not specifically object to
Detective Simpson's testimony at the time of the direct
examination, citing *Harris*, 271 F.3d at 700, we conclude
otherwise based on a review of the record. It is true that
Cook did not interpose a conflict-based objection during
the direct testimony, but he did alert the district court
to the issue almost immediately thereafter. Seconds
after the direct examination was over and cross was
underway, counsel stated that Detective Simpson "made
me a witness in the trial, Judge, and he's not telling the

truth." While counsel certainly could have been more artful in the way he presented the conflict-of-interest issue to the court, we conclude that it was sufficient to put the court on notice as to the basis of Cook's objection. This was not a situation involving "the total absence of an objection below that normally reduces our review to a search for plain error." *See United States v. Carraway*, 108 F.3d 745, 761 (7th Cir. 1997).

We conclude that the trial court abused its discretion in denying Cook's motion for a mistrial after having admitted Detective Simpson's testimony without affording Cook an opportunity to rebut it. Detective Simpson testified as to a key disputed fact, but because of the unresolved conflict of interest the testimony created, Cook had no opportunity to challenge the testimony by presenting his own version of events. The jury heard only one side of a critical issue as if it were uncontroverted. The government has two responses to this: first, that Cook could have called another witness to testify about the conversation and avoid any conflict, and second, that Cook's counsel conveyed to the jury that Cook challenged the testimony in the way that he cross-examined Detective Simpson. Both of these arguments lack merit.

The government first argues that Cook's attorney is not the only witness that could have rebutted Detective Simpson's testimony, and that he could have called a number of courtroom personnel, such as a marshal, to testify about the ability to overhear a conversation at counsel's table. This argument misses the mark and is entirely speculative. The government does not point to

anything in the record demonstrating the presence of specific courtroom personnel at the hearing in question. Even assuming that such individuals could be identified, the hearing took place more than a year before Detective Simpson's testimony. Any courtroom personnel that were present might not recall the proceeding at all, let alone details such as whether a specific conversation did or did not occur. Moreover, it would be unrealistic to expect defense counsel to locate and interview these potential witnesses on such short notice at such a late stage of trial. Realistically, given the difficult timing and the unlikelihood of finding any other witnesses, Cook and his lawyer were the only two people that could have challenged Detective Simpson's unexpected testimony.

The government also argues that the jury heard Cook's version of events because defense counsel effectively "conveyed to the jury" that he disputed Detective Simpson's claim through comments he made. A review of the record reveals that this is not the case. Defense counsel did make an attempt to dispute Detective Simpson's version of events on cross-examination (obviously an awkward exercise given the circumstances) but that attempt was curtailed by the district court. When defense counsel stated that Detective Simpson was "not telling the truth" regarding a conversation, the court ordered the comment stricken and instructed the jury not to consider it:

> DEFENSE COUNSEL:     Mr. Simpson, you were sitting at that table?
>
> DETECTIVE SIMPSON:    Yes.

| | |
|---|---|
| DEFENSE COUNSEL: | And I was sitting at that table? |
| DETECTIVE SIMPSON: | You were sitting on that side, yes. |
| DEFENSE COUNSEL: | And if I told you I was whispering, you'd say I'm a liar? |
| DETECTIVE SIMPSON: | I wouldn't call you a liar. |
| GOVERNMENT COUNSEL: | Objection, Your Honor. |
| DEFENSE COUNSEL: | He made me a witness in the trial, Judge, and he's not telling the truth. |
| GOVERNMENT COUNSEL: | I'd move to strike. |
| THE COURT: | We'll show that comment stricken, ladies and gentlemen. You're not to consider that. |

Here, counsel was not able to convey to the jury, in any meaningful way, the fact that Cook disputed Detective Simpson's claim. Moreover, even if the district court had not stricken counsel's statements, Cook should not have had to rely only on comments from counsel during cross-examination in order to challenge Detective Simpson's testimony. In order to have had a meaningful opportunity to challenge Detective Simpson's testimony, Cook's counsel would have had to take the stand and testify (Cook had chosen to exercise his Fifth Amendment

rights and not testify at trial). Whether and how Cook's counsel could have done so would have been determined by the advocate-witness rule. The advocate-witness rule generally bars a lawyer from acting as both an advocate and a witness in the same proceeding except under special circumstances. *United States v. Marshall*, 75 F.3d 1097, 1106 (7th Cir. 1996); *United States v. Ewing*, 979 F.2d 1234, 1235-36 (7th Cir. 1992).[5] The rule "articulates the professional impropriety of assuming the dual role of advocate and witness in a single proceeding [and] has deep roots in American law." *United States v. Johnston*, 690 F.2d 638, 642 (7th Cir. 1982). The rule recognizes the danger that an attorney might not be a fully objective witness, as well as the risk that a jury could confuse the two roles when deciding how much weight to accord to a testifying attorney's statements. *See United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983); *see also Ewing*, 979 F.2d at 1236.

It is within the discretion of the trial court to determine whether the advocate-witness rule bars counsel from testifying in a particular case without withdrawing. *Morris*, 714 F.2d at 671. The problem in this case is that the district court never exercised that discretion, because it did not address the conflict of interest claimed by Cook's counsel when ruling on his request for a mistrial,

---

[5] The rule is reflected in Indiana's Rules of Professional Conduct, which have been adopted in the United States District Court for the Southern District of Indiana pursuant to Local Rule 83.7(g). *See* Ind. Rules of Prof'l Conduct 3.7.

even though counsel specifically raised the argument when making his motion. We are presented with a peculiar situation in which the parties and the court recognized the conflict of interest that Detective Simpson's testimony created, but took no steps to actually address it.[6] Cook's counsel could have taken the stand to impeach Detective Simpson's testimony, either as his lawyer or after having withdrawn, depending on the court's application of the advocate-witness rule. Or, the district court might have determined that the conflict of interest was sufficiently serious that it presented a situation warranting whole-sale exclusion of Detective Simpson's disputed testimony. *See United States v. Messino*, 181 F.3d 826, 830 (7th Cir. 1999). The record indicates that none of these avenues were explored before denying Cook's motion for a mistrial.[7]

---

[6] The government was certainly aware of the conflict as well. In opposing Cook's motion for a mistrial, government counsel stated, "I don't want to get into an argument between—and insert myself into an argument between [defense counsel] and Mr. Simpson over what was said at what voice because I wasn't there."

[7] While it did not have a duty to raise the issue on its own, the district court could have addressed the question of whether and how to have Cook's counsel testify once Cook alerted the court to the conflict of interest that had arisen. *See, e.g., United States v. Watson*, 87 F.3d 927, 931-32 (7th Cir. 1996) (district court "was correct to flag the issue" of potential advocate-witness

(continued...)

The error in admitting Detective Simpson's unrebutted testimony was not harmless, because it is likely to have had an impact on the verdict against Cook. *See United States v. Wantuch*, 525 F.3d 505, 515 (7th Cir. 2008) (reversal warranted only if testimony had a "substantial and injurious effect or influence on the jury's verdict"). If the jury had convicted Cook without Detective Simpson's later testimony, we could have been satisfied that the jury thought his voice identification based on the words that he heard Cook speak in open court was sufficient. However, given that the disputed rebuttal testimony was admitted, we cannot be sure whether the jury thought that the original identification alone was sufficient, or whether it was the testimony regarding the fifteen-minute conversation that convinced the jury it was Cook's voice on the tape. Given that the latter represents far stronger evidence, we can assume it had an impact in the jury's decision. And given the scant evidence aside from the wiretap implicating Cook as part of the conspiracy, if the jury did not believe that it was his voice on the tapes, it could not have found him guilty beyond a reasonable doubt.

"We will reverse a district court's denial of a mistrial only if we have a strong conviction that the district court erred. The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v.*

---

(...continued)

problem); *see also* 8 Fed. Proc., L. Ed. § 20:231 ("a judge may . . . sua sponte raise ethical problems relating to an attorney's participation in a proceeding").

*Danford*, 435 F.3d 682, 686 (7th Cir. 2005) (internal quotation marks and citation omitted). Here, Cook was deprived of a fair trial when the jury heard critical, disputed testimony from Detective Simpson without Cook having had an opportunity to challenge it. We are compelled to vacate Cook's conviction and remand his case for retrial.

### III. CONCLUSION

For the foregoing reasons, Cook's conviction is VACATED and his case is REMANDED to the district court for proceedings consistent with this opinion. The convictions and sentences of all other defendants are AFFIRMED.