UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:07-CR-0024-RLY-CMM-03 |
| | ) | |
| BRIAN JONES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

The Defendant, Brian Jones, by counsel, Terry Tolliver, respectfully moves this Court to grant his *Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)*. Mr. Jones is entitled to relief based upon the "extraordinary and compelling" circumstances presented by changes in the law which invalidate his career offender designation, a need to care for his elderly mother whose health continues to decline, and the evidence of his rehabilitation. For these reasons, Mr. Jones requests that he be released from BOP custody.

**A.     Background**

On March 19, 2009, Mr. Jones was sentenced to the maximum statutory guideline of life imprisonment after being found guilty to violations of 21 U.S.C. §§ 841(a)(1), 846 and 851, Conspiracy to Distribute 50 Grams or More of Cocaine Base.[1] Based on two prior Indiana convictions for violations of Indiana Code § 35-48-4-1(a)(1), Dealing in Cocaine or Narcotic Drug, a class B Felony, under Cause Nos. 82C01-9607-CF-00706 and 82D02-0207-FA-00613, Mr. Jones' guideline sentencing range was enhanced from a base level of 32 to 37 by his designation

---

[1] *See* Doc. No. 395, *Judgment as to Brian Jones.*

as a career offender, pursuant to U.S.S.G. § 4B1.1(a)(3).[2] This provision states that "A defendant is a career offender if [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

Under the 5-level career offender enhancement, Mr. Jones' sentencing range started at a minimum of 360 months – life, and he received the higher end of life imprisonment followed by a 10-year period of supervised release.[3] Mr. Jones has been imprisoned since August 30, 2007, or 194 months, and he is located at Edgefield Medium I Federal Correctional Institution in South Carolina. According to the BOP, Mr. Jones will be eligible for release on April 3, 2029.

Now, Mr. Jones contends that the § 4B1.1(a)(3) enhancement resulting from his designation as a career offender is improper because his prior Indiana felony convictions are not "controlled substance offense[s]", according to *United States v. De La Torre,* 940 F.3d 938 (7th Cir. 2019).

**B.    Mr. Jones has exhausted his administrative remedies.**

Ordinarily, a defendant must exhaust administrative remedies with the BOP or wait 30 days after submitting a request for a reduction of sentence to the warden, whichever comes first.[4] Here, Mr. Jones' request for administrative remedy, by way of a request for a reduction in sentence, was submitted and received by the Warden of USP Atwater, where Mr. Jones resided prior to his relocation, on March 23, 2023. On March 29, 2023, Mr. Jones was relocated to FCI Edgefield on April 23, 2023. Subsequently, counsel for Mr. Jones mailed an identical request for administrative remedy, by way of a request for a reduction in sentence, to FCI Edgefield on May 2, 2023.

---

[2] *See* Doc. No. 910, *Presentence Investigation Report,* pg. 7.
[3] *See* Doc. No. 395, *Judgment as to Brian Jones.*
[4] *See* 18 U.S.C. § 3582 (c)(1)(A).

C. **Legal Standard**

i. **The First Step Act**

In December 2018, then-President Trump signed the First Step Act into law. P.L. 115-391. The Act was a momentous culmination of a bi-partisan effort to improve criminal justice outcomes, as well as "to reduce the size of the federal prison population while also creating mechanisms to maintain public safety."[5] In pursuit of such goals, "[t]he statute amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration."[6]

Motion to Reduce Sentence, coined "compassionate release", is codified in its amended form at 18 U.S.C. § 3582(c) and its purpose is to provide the means for inmates to be released from prison early whenever "extraordinary and compelling reasons warrant such a reduction."[7] Provided Congress did not define "extraordinary and compelling circumstances" under 18 U.S.C. § 3582(c)(1)(A)(i), it directed the U.S. Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."[8]

ii. **U.S. Sentencing Commission – § 1B1.13**

In interpreting the meaning of "extraordinary and compelling reasons," some courts turned to the United States Sentencing Commission's policy statement for the BOP on compassionate release, adopted before the passage of the First Step Act.[9] However, as the Seventh Circuit has noted,

> *Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners. In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to [prisoner-initiated requests for compassionate release].*

---

[5] *See* Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019).
[6] *See United States v. Brown*, 411 F.Supp.3d 446, 448 (S.D. Iowa 2019).
[7] *See* § 3582(c)(1)(A)(i).
[8] *See* 28 U.S.C. § 994(t).
[9] *See* U.S.S.G. § 1B1.13.

3

> *And because the Guidelines Manual lacks and applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement.*[10]

Thus, "[d]istrict judges must operate under the statutory criteria," which provides that "only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)."[11]

The First Step Act provides that inmates are eligible for compassionate release or reduction of sentence when they present "extraordinary and compelling circumstances", and they are "not a danger to the safety of any other persons or the community."[12] The 7th Circuit Court of Appeals, drawing from U.S.S.G. § 1B1.13 and its Application Notes, determined 4 categories which "extreme and compelling circumstances" might exist: (A) Medical Conditions of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) Other Reasons.[13]

On November 1, 2023, the U.S. Sentencing Commission's *February 2, 2023, Proposed Amendments to First Step Act – Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A),* went into effect. These amendments both add new categories of "extraordinary and compelling" circumstances under §1B1.13, Application Note 1, and expand the existing categories, including (C) Family Circumstances, to include the care of family members outside of minor children.

Recognizing "the diversity of family structures in America", this "third modification to the family circumstances ground for relief adds a provision that applies when the defendant establishes that similar circumstances exist with respect to a person whose relationship with the defendant is

---

[10] *See United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. 2020).
[11] *Id.* at 1180-81.
[12] *See* 18 U.S.C. § 3582(c)(1)(A)(i).
[13] *See* U.S.S.G. § 1B1.13, cmt. n. 1.

similar in kind to that of an immediate family member, and the defendant would be the only available caregiver."[14]

Of the new subsections providing for "extraordinary and compelling circumstances", subsection (b)(6) "Unusually Long Sentence", appears to address the debate sparked by the U.S. Supreme Court's decision in *Concepcion v. United States,* 142 S. Ct. 2389 (2022) of whether changes in the law qualify as "extraordinary and compelling circumstances", now permitting "a judge to consider a non-retroactive change in law as an extraordinary and compelling reason in specified circumstances."[15]

Excluding non-retroactive amendments to the Guidelines Manual, the Commission makes clear that subsection (b)(6) extends only in "narrowly circumscribed circumstances" specifically "where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least 10 years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."[16] Only where these three components exist in a case, and only after "the court has fully considered the defendant's individualized circumstances", the change in law can qualify as an "extraordinary and compelling" reason to grant a defendant the relief he or she requested.[17]

Also, "the requirements in subsection (b)(6) that the defendant be serving an unusually long sentence and have served at least ten years of such sentence are not applicable to cases not covered by that subsection. These requirements apply only when a defendant seeks to have a non-

---

[14] *See* The United States Sentencing Commission Proposed Amendment: First Step Act – Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), *Reader-Friendly April 27, 2023, Adopted Amendments* (Effective November 1, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf, at pg. 4.
[15] *Id.,* at pg. 3.
[16] *Id.,* at pgs. 5 – 6.
[17] *Ibid.*

5

retroactive change in law itself be considered an extraordinary and compelling reason warranting a reduction in sentence."[18]

### iii. Change in the Law

On October 10, 2019, the 7th Circuit Court of Appeals decided *United States v. De La Torre,* 940 F.3d 938 (7th Cir. 2019), an appeal arising out of the U.S. District Court for the Southern District of Indiana, Indianapolis Division, holding that the defendant's 4 prior Indiana convictions for dealing in Schedule I, II, or III controlled substances under Indiana Code § 35-48-4-2 (2002) did not qualify as prior felony drug offenses under 21 U.S.C. § 851 because they are categorically broader than the federal definition for "felony drug offense".[19] On this point, the Court in *U.S. v. De La Torre* (7th Cir. 2019) explained that, "Because the federal definition of methamphetamine includes only its optical isomers whereas the Indiana definition includes something more than just optical isomers of methamphetamine, the mismatch renders the Indiana statute overbroad."[20]

Less than a year later, on July 20, 2020, the 7th Circuit Court of Appeals decided *United States v. Ruth,* 966 F.3d 642, 647, 650 (7th Cir. 2020), holding that "an Illinois conviction for possession with intent to deliver cocaine is not a 'felony drug offense' because Illinois's definition of cocaine – like Indiana's – includes optical, positional, and geometric isomers, and therefore is broader than federal law."[21] Here, the court in *United States v. Ruth,* 966 F.3d 642 states that the "conduct-based categorical approach applies to § 841(b)(1)(C)'s sentencing enhancement" because "[t]he term 'felony drug offense' describes predicate offenses…unquestionably refers to conduct and not generic offenses."[22]

---

[18] *Ibid.*
[19] *See U.S. v. De La Torre,* Case No. 1:16-cr-00251.
[20] *Id.,* at *951.
[21] *See United States v. Ruth,* 966 F.3d 642, 647, 650 (7th Cir. 2020).
[22] *See Id.,* at *647.

This approach, when applied to the Illinois statute at issue in *U.S. v. Ruth,* results in the same conclusion as Indiana's analogous statute's analysis, which is that "the plain language of the statute categorically covers a larger swath of conduct than its federal counterpart."[23] Because the defendant's Illinois conviction in *U.S. v. Ruth* was not a predicate "felony drug offense" under his applicable penalty statute, 21 U.S.C. § 841(b)(1)(C), the court concluded that "the district court erred in sentencing [him] with the statutory enhancement" and this error "affected [his] substantial rights because the enhancement increased his Guidelines range. Without the § 851 enhancement, [the defendant's] Guidelines range would have been 151 to 188 months" as opposed to 188 to 25 months.[24]

## ARGUMENT

**I. Mr. Jones is serving an "unusually long sentence" because under *United States v. De La Torre*, Mr. Jones is no longer considered a career offender, and his gross sentencing disparity is an "extraordinary and compelling circumstance" that justifies his immediate release.**

The Commentary to § 1B1.13 – Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) of the United States Sentencing Commission Guidelines Manual allows the Court to consider unusually long sentences in light of changes in the law. Under the revised list of specified "extraordinary and compelling reasons", new subsection (b)(6) provides that where (a) a defendant is serving an unusually long sentence; (b) and has completed at least ten years of that sentence; (c) an intervening change in the law which produces a gross disparity between the sentence being served and the sentence likely to be imposed today…is an extraordinary and compelling reason for granting relief, after the court having found the defendant's individualized

---

[23] *See Id.,* at *648.
[24] *See Id.,* at *650.

7

circumstances favorable to his motion.[25] Each of these ingredients outlined in subsection (b)(6) exist in Mr. Jones' case. Because Mr. Jones can establish the foregoing criteria in Application Note 1(b)(6), this Court should find that his evidence of rehabilitative efforts and attentive reentry plan permit his immediate release.

    a. <u>Mr. Jones is serving an unusually long sentence.</u>

Pursuant to Subsection (b)(6)(a), Mr. Jones is serving an unusually long sentence of life followed by 10 years of supervised release.[26] This unusually long sentence is a consequence of the infamous career offender enhancement under § 4B1.1, which imposed a 5-level increase to Mr. Jones' baseline offense level of 32, resulting in a total offense level of 37.[27] To impose this enhancement, the Government cited two of Mr. Jones' prior felony convictions that arose out of Indiana, including:

    i. Dealing in Cocaine, a class B felony, in violation of Indiana Code § 35-48-4-2, under Cause No. 82C01-9607-CF-00706; and
    ii. Dealing in Cocaine or Narcotic Drug, a class A felony, in violation of Indiana Code § 35-48-4-1(a)(1), under Cause No. 82D02-0207-FA-00613.[28]

The Sentencing Guidelines provide a sentencing range of 360 months to life imprisonment for a Total Offense Level of 37 and Criminal History Category VI. Mr. Jones received the highest end of the Guidelines range, life imprisonment followed by 10 years of supervised release.[29]

Today, Mr. Jones would be sentenced under a Guidelines range of 210 months – 262 months because, under *De La Torre*, Mr. Jones cannot be designated as a career offender or receive a 5-level offense enhancement pursuant to § 4B1.1. Without this enhancement, Mr. Jones' base

---

[25] *See* Commentary to § 1B1.13 – Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) of the United States Sentencing Commission Guidelines Manual, Application Note 1(b)(6); *Amended* November 1, 2023.
[26] *See* Doc. No. 395, *Judgment as to Brian Jones.*
[27] *See* Doc. No. 910, *Presentence Investigation Report,* pg. 7.
[28] *Ibid.*
[29] *See* Doc. No. 395, *Judgment as to Brian Jones.*

level is 32. A total offense level of 32 and criminal history Category VI results in a sentencing range of 210 – 262 months under the Sentencing Guidelines. Even if Mr. Jones again received the highest end of the Guidelines range, this would result in 262 months of imprisonment.

The difference between life imprisonment, the sentence Mr. Jones received, and 262 months of imprisonment, the sentence Mr. Jones would receive today, supports the conclusion that he is serving an unusually long sentence within the meaning of Subsection (b)(6)(a).

b. <u>Mr. Jones has completed 10 years of his sentence.</u>

Pursuant to Subsection (b)(6)(b), Mr. Jones has completed more than ten (10) years of his sentence. Mr. Jones has been imprisoned since August 30, 2007; therefore, to-date he has completed over 16 years, or 184 months, of his sentence.[30] Of the total term of imprisonment the BOP expects Mr. Jones to serve, 21 years and 7 months, Mr. Jones will have completed over 76% on the date of this filing.[31] Of the term of imprisonment Mr. Jones would receive if he were sentenced today, or 262 months of imprisonment, he has completed 70% to-date.

c. <u>The gross disparity between the sentence Mr. Jones received and the sentence he would receive if he were sentenced today is a result of an intervening change in the law.</u>

Since Mr. Jones was sentenced, the 7th Circuit Court of Appeals decided *United States v. De La Torre,* holding that the defendant's prior Indiana convictions for dealing in Schedule I, II, or III controlled substances under Indiana Code § 35-48-4-2 (2002) did not qualify as prior felony drug offenses under 21 U.S.C. § 851 because they are categorically broader than the federal definition for "felony drug offense". A year after *De La Torre,* the 7th Circuit decided *United States v. Ruth*, followed by *Harris v. United States,* 13 F.4th 623, 626 – 27, 630 (7th Cir. 2021). On September 10, 2021, the 7th Circuit Court of Appeals, in *Harris v. United States,* held that Indiana

---

[30] *See* Doc. No. 910, *Presentence Investigation Report,* pg. 1.
[31] *See Results for USM No. 08665-028,* BOP – Federal Inmates By Number, https://www.bop.gov/inmateloc/ (Retrieved June 28, 2023) (Mr. Jones' Expected Release Date listed as 04/03/2029).

cocaine convictions do not qualify as § 851 predicates for the reasons expounded in *De La Torre* and *Ruth*.[32]

On May 2, 2023, in *Stewart v. United States,* the U.S. District Court for the Southern District of Indiana, Indianapolis Division, granted the relief requested by the Petitioner in his motion pursuant to 28 U.S.C. § 2255, where, as in Mr. Jones' case, "[a]t the time [the petitioner] was convicted, a person convicted under § 841 (a)(1) and (b)(1)(A) faced a minimum 10-year sentence. However, if that person had two prior convictions for a 'felony drug offense', the minimum sentence became life."[33] In *Stewart,* the United States conceded that the Petitioner's claims regarding his predicate offenses under § 851 and § 924 are "meritorious, that his mandatory minimum sentence was incorrectly calculated, and that he is entitled to resentencing."[34]

Like Mr. Jones' prior Indiana convictions, the Petitioner in *Stewart* had at least two (2) prior convictions out of Indiana for Dealing in Cocaine or Dealing in a Schedule I, II, or III Controlled Substance.[35] Unlike Mr. Jones' good fortune today, when the Petitioner in *Stewart* sought relief for his unusually long sentence, the U.S. Sentencing Commission's amendments to the Guidelines Manual were not in effect, therefore he could not pursue relief by a motion brought under § 3582(c)(1)(A).

These cases show that the gross disparity between the sentence Mr. Jones received, life imprisonment, and the sentence he would receive if he were sentenced today, 260 months of imprisonment, is a result of intervening changes in the law. Today, both the 7th Circuit Court of Appeals and courts in this District recognize that Indiana cocaine convictions are not predicates

---

[32] *See Harris v. United States,* 13 F.4th 623, 626 – 27 (7th Cir. 2021).
[33] *See Stewart v. United States,* No. 1:20-cv-01021-JPH-TAB, 2023 U.S. Dist. LEXIS 75936 (S.D. Ind. May 2, 2023) (citing 21 U.S.C. § 841 (b)(1)(A)).
[34] *Id.,* at *4 – 5.
[35] *Id.,* at *5.

for the purpose of imposing the career offender enhancement. The law has changed. In sum, the foregoing points illustrate that Mr. Jones' sentence is unusually long, which is an extraordinary and compelling reason for his immediate release under new Subsection (b)(6)(a), after careful consideration of the relevant § 3553 (a) factors.

## II. Mr. Jones' release will allow him to care for his elderly mother.

While Mr. Jones does not present his mother's care as an "extraordinary and compelling" reason to justify his release, he requests this Court consider his mother's need for his assistance presented by the growing difficulties of being elderly a supplemental concern with regards to his request to be released. Specifically, Mr. Jones' mother, Barbara Jones, is seventy-eight (78) years old, and she needs her son's support to assist with everyday tasks such as maintaining the household, running errands, and other activities that are mobilizing. In the absence of siblings or capable family members, Mr. Jones is the only person available to answer his mother's requests for help, as she "approaches the age of uncertainty."[36] Worth noting, Ms. Jones owns and operates a resale store in Evansville, Indiana, which is becoming difficult to manage on her own; therefore, Mr. Jones' release would improve the quality of Ms. Jones' life, while providing him stable income at the beginning of his reentry.

## III. The Relevant § 3553 (a) Sentencing Factors warrant reducing Mr. Jones' sentence to time served.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. §3553(a) to determine whether a sentencing reduction or modification is warranted and whether the defendant's release would be a danger to the community. 18 U.S.C. § 3582(c)(1)(A)(i). Section 3553(a)'s primary directive is for sentencing

---

[36] *See* Exhibit "A", *Letter of Barbara Allen.*

11

courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."[37]

In a compassionate release case, which is not a re-sentencing of the defendant, or re-evaluation of the defendant's original sentence, the inquiry is whether these factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence.[38] Section 3553(a), paragraph 2 includes the following goals:

i. <u>The time that Mr. Jones has already served reflects the seriousness of his offense, promotes respect for the law, and provides just punishment for his offense.</u>

In Mr. Jones' case, a reduction of sentence would not diminish the seriousness of the offense that was committed. Here, Mr. Jones has been imprisoned for over sixteen (16) years. This is in addition to the ten (10) years of supervised release he has yet to serve, resulting in a total of over twenty-six (26) years that Mr. Jones will be held accountable for his actions. This time reflects the seriousness of the offense Mr. Jones committed, promotes respect for the law, and provides just punishment for the offense.

This twenty-six (26) year punishment Mr. Jones will have completed after the ten (10) years of supervised release that is to come, will deter any future criminal conduct by him, and his extensive reentry plan shows the level of detail he has put into ensuring his reentry is a success. On January 15, 2009, Mr. Jones' *Presentence Investigation Report* was prepared.[39] While this case wasn't Mr. Jones' first time facing a serious criminal conviction, this time, Mr. Jones' mother felt that, while not intended as an excuse for his crime, "She believes her son started selling drugs due

---

[37] *See* 18 U.S.C. § 3582(c)(1)(A)(i).
[38] *United States v. Ebbers,* 2020 WL 91399, at *7 (Jan. 8, 2020).
[39] *See* Doc. No. 910, *Presentence Investigation Report,* pg. 1.

to not being able to find a good-paying job."[40] To an extent, this explanation could be true when considering that at the time, the various job positions Mr. Jones held paid as low as $8 per hour and as high as $10.00 per hour, despite the fact that he has various degrees from accredited Universities such as Ball State University.[41]

Here, Ms. Allen is making her home, located in Evansville, Indiana, available to Mr. Jones, which will help to alleviate his financial stress during his reentry while he gains financial stability through long-term employment. Throughout Mr. Jones' period of supervised release, he will be *required* to maintain full-time employment, which is intentional to promote rehabilitative efforts by the individual on release and deter them from turning to criminal activity for a source of financial support. Additionally, because Mr. Jones plans to be the primary caretaker of his elder mother, he has the opportunity to enroll in Indiana's structured family caregiving program and receive compensation for doing so in exchange for the agency's associated training fees.[42] Considering these realities, upon release from his 16-year imprisonment, Mr. Jones will be adequately deterred from criminal conduct.

    ii.    <u>The period of imprisonment that Mr. Jones has served is a deterrent to any future criminal conduct by him because he is rehabilitated.</u>

As fellow inmate Erskine Salter noted, "anyone that encounters [Mr. Jones'] presence can see remorse through his daily duties."[43] Mr. Jones has been rehabilitated; to be sure, his 10-year term of supervised release and the terms attached to it are purposeful to protect the public from further crimes by him. To reiterate, Mr. Jones will be under supervision until he is nearly 60 years old. Under the presumption that Mr. Jones' *Motion* is granted, he will have been free of criminal

---

[40] *Id.,* at pg. 13.
[41] *Id.,* at pg. 15.
[42] *See Older Americans Act/ Family Caregiver Support,* Family and Social Services Administration (2023), https://www.in.gov/fssa/da/older-americans-act-family-caregiver-support/ (Retrieved on June 29, 2023).
[43] *See* Exhibit "B", Letter of Erskine Salter.

conduct for the past 16 years when he is released, as evidenced by his inmate discipline data. These reports show that since his last report for refusing his work assignment in 2019, Mr. Jones has not been disciplined.[44] Also, Mr. Jones' First Step History indicates that he was at a medium risk recidivism level as of April 18, 2023, but with the support of his mother and probation officer, the obligations imposed throughout supervised release, and the skills he has acquired from his rehabilitation programs in prison, Mr. Jones will not repeat his past conduct.

While a medium risk of recidivism assignment is not as assuring as a low-risk assignment, Mr. Jones is unlikely to recidivate, as demonstrated by the United States Sentencing Commission's statistics on the effects of age on recidivism. According to these statistics, a surprising 38.8% of offenders between 45 and 49 years old were rearrested, while 17.4% were reincarcerated.[45] Here, Mr. Jones was 31 years old when he was imprisoned.[46] Today, Mr. Jones is 46 years old, and he will be 56 years old by the time that he completes his 10-year period of supervised release. Given that the U.S.S.C.'s statistics shows a 55.5% decrease in reoffender rates from ages 35 – 39 and 50 – 54, Mr. Jones has a low likelihood of recidivism given his demographics. In this sense, Mr. Jones' 16-year imprisonment provides just punishment to deter him from future criminal acts, complimented by current statistics on reoffender rates.

    iii.    <u>Mr. Jones's Reentry Plan shows that his sixteen (16) years of imprisonment has satisfied each purpose of his sentence under § 3553 (a)(2)(D).</u>[47]

In addition to tending to the needs of his mother while residing with her in her home, Mr. Jones plans to return to his most recent employment, as a Certified HVAC Technician, by rejoining

---

[44] *See* Exhibit "C", *Inmate Discipline Data,* pg. 1.
[45] *See Statistics on Recidivism-Age,* United States Sentencing Commission (2017),https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf, at pg. 23.
[46] *See* Doc. No. 910, *Presentence Investigation Report,* pg. 2.
[47] *See U.S.A. v. Damon Powell,* 1:16-cr-00152-JMS-MJD, (May 21, 2020) (Dkt. No. 57).

the Local No. 20 Sheet Metals Union of Evansville. To be sure, the work that Mr. Jones has already done to rehabilitate himself while serving his sentence, the completion of over 100 BOP programs or courses, will assist him in meeting his occupational goals. For example, Mr. Jones completed 6 mathematic courses focused on managing personal finances, including Consumer Household mathematics, Career Preparation, Financing a Car, Budgeting, Paying Taxes, and Banking.[48] As well, Mr. Jones completed courses focused on improving career-related skills, such as Building Trades, which compliments his associate degree in Heating and Air Conditioning from Oakland City University, Career Preparation, Commercial Driver's License, Employment Basics, Employment Opportunities, Career Planning, and Completing a Job Application.[49] Other courses taken by Mr. Jones provided him with certain life skills that will become immediately useful to him upon his release, including How to get Transportation, How to get a Driver's License, How to Purchase Insurance, Using Credit, and Basic Life Skills.[50] As Mr. Beasley, an inmate house with Mr. Jones, noted, "Mr. Jones isn't just 'doing time', he is actually using his time to sharpen his understanding, and his willingness to give to others has been displayed many times since I have known him."[51]

For immediate, passive income, Mr. Jones plans to be employed, part-time, by his mother, Barbara Allen, as an assistant to her resale business' operations within the Evansville Antique Mall, located off of HW 41 and Riverside Drive. In light of Ms. Jones' age, she plans to train Mr. Jones in her position, so that he may undertake care of and ownership of the sixteen (16) year old business.

---

[48] *See* Exhibit "D", *Individualized Needs Plan*.
[49] *Ibid.*
[50] *Ibid.*
[51] *See* Exhibit "E", Letter from Charlton Beasley.

Finally, over the past few years, Mr. Jones acquired an interest in commercial driving opportunities; in addition to his other certificates or licenses, Mr. Jones hopes to enroll in a paid Commercial Driver's License ("CDL") – Class A license – so that he can work towards that license, and eventually purchase his own truck so that he can expand his income ability. Already, Mr. Jones has compiled research on this subject, and he believes that the CDL program offered through "Driveco" CDL Learning Center, located at 3501 North First Avenue, Evansville, Indiana, is a suitable option for his enrollment. As an alternative, Mr. Jones has spoken with a representative of IvyTech Community College's CDL training program, who provided him with its enrollment details.

    iv.    <u>Upon Mr. Jones' return home, he will be greeted by friends and family, who will support him during his ten (10) year period of supervised release.</u>

As fellow inmate Alexander Nosov stated in his letter of support, Mr. Jones "can be an asset to his community and society in general, as well will be a great father who will raise his children to become law abiding citizens and promoters of compassion, love, faith, and hope, as Brian himself is."[52] In addition to the around-the-clock support that he will receive from his mother, Mr. Jones will continue receiving the support of his Uncle Richard[53] and extended family, as well as spiritual advice and mentorship of Reverand Gerald C. Arnold of the Independence Baptist Church, located in Evansville, upon his release. Through this membership, and alongside Reverand Arnold, Mr. Jones plans to partake in community outreach efforts, attend worship, and receive regular counsel.

Mr. Jones has been imprisoned since August 30, 2007. According to the BOP, he is expected to be released from his life sentence on April 3, 2029. He has served over 70% of his

---

[52] *See* Exhibit "F", Letter from Alexander Nosov.
[53] *See* Exhibit "G", Letter from Richard Allen.

16

sentence. When including the 10 years of supervised release that is to follow, this punishment should satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a). Thus, modifying Mr. Jones' sentence to time-served would not undermine the goals of the original sentence.

## Conclusion

For the foregoing reasons, Mr. Jones respectfully requests that this Court, after considering his extraordinary and compelling circumstances, grant his *Motion for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)* and order his sentence be modified to time served.

Respectfully Submitted

BRATTAIN MINNIX TOLLIVER

By: /s/ Terry Tolliver
Terry Tolliver, #22556-49
Attorney for the Defendant
One Indiana Square, Suite 2625
Indianapolis, IN 46204
(317) 231-1750
terry@bmgindy.com

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be made available by operation of the Court's CM/ECF system.

/s/ Terry Tolliver
Terry Tolliver